Filed 3/11/22  P. v. Bravo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ABRAND SALAZAR BRAVO,<br><br>    Defendant and Appellant. | F078651<br><br>(Super. Ct. No. BF172411A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Barbara A. Smith, under appointment by the Court of Appeal, Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Abrand Salazar Bravo was convicted of numerous crimes after he used an assault weapon[1] to threaten two people.  On appeal, he challenges his assault-related convictions, contending the evidence was legally insufficient because there was no credible evidence the weapon was loaded with ammunition.  We disagree and affirm the judgment.

## BACKGROUND

**Charges**

The Kern County District Attorney charged Bravo with the following 11 crimes: assault with an assault weapon (Pen. Code,[2] § 245, subd. (a)(3), count 1); assault with an assault weapon (§ 245, subd. (a)(3), count 2); assault with a semiautomatic firearm (§ 245, subd. (b), count 3); assault with a semiautomatic firearm (§ 245, subd. (b), count 4); assault with a firearm (§ 245, subd. (a)(2), count 5); assault with a firearm (§ 245, subd. (a)(2), count 6); illegally possessing a firearm (§ 29800, subd. (a)(1), count 7); criminal threats (§ 422, count 8); criminal threats (§ 422, count 9); possessing methamphetamine for sale (Health and Saf. Code, § 11378, count 10); and possessing a large-capacity magazine (§ 32310, count 12).[3]  Counts 1, 2, 3, 4, 8, and 9 included an enhancement for personally using a firearm (§ 12022.5, subd. (a)).  Count 10 included an enhancement for being armed with a firearm.  (§ 12022, subd. (c).)

**Evidence[4]**

The victims were outside a residence when Bravo arrived nearby in a vehicle.  Both victims approached the vehicle.  While the victims were less than 10 feet away,

---

**1**     An assault weapon is a firearm meeting the requirements of Penal Code sections 30510 or 30515.

**2**     Undesignated statutory references are to the Penal Code.

**3**     Bravo was charge alongside a codefendant.  We omit the charges against the codefendant from the summary.

**4**     We omit from our summary the evidence relating to count 10 (Health and Saf. Code, § 11378) and the evidence relating to the codefendant because it is not relevant to the issue on appeal.

Bravo pointed an assault weapon at them and stated, "If you don't leave, then we're going to kill you."[5] The weapon's magazine was attached at the time it was pointed. Bravo subsequently left the area.

Several hours later,[6] law enforcement officers searched a residence expecting to find Bravo. They did find Bravo inside, next to the assault weapon with its magazine now detached. The weapon was not loaded. Officers searched the room and found a single round of ammunition fitting the weapon.

**Verdict and Sentence**

The jury acquitted Bravo on counts 5, 6, and 9, but convicted on the remaining charges including attempted criminal threats as a lesser included offense to count 9.[7] The enhancements to counts 1, 2, 8, and 9 were found true. The enhancement to count 10 was found not true. Bravo was sentenced to serve eight years eight months in prison.

## DISCUSSION

The sole issue on appeal is whether the evidence was sufficient to prove the assault weapon was loaded with ammunition. Bravo primarily presents his claim by distinguishing his case from others in which the evidence was found sufficient to prove a firearm was loaded. Secondarily, he notes testimony describing Bravo's precise actions and speech was ambiguous.

---

[5] Bravo was the passenger in a vehicle driven by a codefendant.

[6] The record is somewhat ambiguous in this regard. One victim testified the incident occurred between 1:00 p.m. and 2:00 p.m. and that he called 911 20 minutes later but law enforcement had not responded by 4:00 or 5:00 p.m. Based on official records, it appears the victim called 911 around 7:00 p.m., law enforcement did not arrive at the scene until about 9:40 p.m., and the search commenced at approximately 11:30 p.m.

[7] No verdicts were returned on counts 3 and 4 because those were charged as lesser included offenses to counts 1 and 2. (See *People v. Reed* (2006) 38 Cal.4th 1224, 1226-1227.)

The People argue Bravo's "words and actions during the encounter" were sufficient to prove the assault weapon was loaded. Specifically, the People claim the jury could reasonably conclude the weapon was unloaded after the threat. They also assert resolving credibility is solely within the jury's province. We agree with the People.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] … We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 (*Lindberg*).)

" '[A]n assault is not committed by a person's merely pointing an (unloaded) gun in a threatening matter at another person.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 147 (*Penunuri*).) "A defendant's own words and conduct in the course of an offense may support a rational fact finder's determination that he used a loaded weapon." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 13 (*Rodriguez*).)

Here, the evidence sufficiently proved the assault weapon was loaded when Bravo pointed it at the victims. The record indicates Bravo pointed it while the victims were only a few feet away. The jury could reasonably find it is unwise to use an unloaded weapon to threaten someone at a close distance because the victim might be armed and prepared to defend against the threat.[8] Thus, the weapon must have been loaded.

---

[8]     The prosecutor made this exact argument in the trial court.

4.

More importantly, when law enforcement later discovered Bravo with the assault weapon, its magazine had been removed and matching ammunition was found nearby. A reasonable jury could find the weapon had been recently unloaded, i.e., it was loaded when used in the earlier threat.[9]

To further illustrate the sufficiency, consider *Penunuri*. There, the defendant pointed a firearm at someone and then fired it hours later. The Supreme Court found sufficient evidence it was loaded when pointed earlier in time due to the fact it was fired hours later. (*Penunuri*, *supra*, 5 Cal.5th at p. 147.) In other words, although there was no direct evidence the firearm was loaded when pointed *earlier* in time, there was evidence it was loaded a short time later, and that sufficed to prove it was loaded on *both* occasions. In other words, the fact it was provably loaded *later* in time sufficed to prove it was loaded *earlier* in time. The inference applies in this case as well.

An obvious difference is that in *Penunuri*, the weapon was discharged rather than unloaded in the traditional sense. That is not a material difference in our view. In each case, ammunition matching the weapon was proven to accompany it mere hours after a prior assaultive act. That suffices to prove the weapon was loaded during the prior assault.

As for the argument the evidence was ambiguous, incredible, or uncertain, we cannot reweigh the evidence or substitute our own resolution of the facts. (*Lindberg*, *supra*, 45 Cal.4th at p. 27.) We must accept the jury's factual resolution so long as the evidence is neither physically impossible nor inherently incredible. (*People v. Panah* (2005) 35 Cal.4th 395, 489.) That is the case here. Accordingly, we accept the jury's factual resolution and conclude Bravo has failed to overcome the presumption favoring the judgment. (See *Rodriguez*, *supra*, 20 Cal.4th at pp. 13-14.)

---

[9]    Indeed, it appears the jury believed the weapon was loaded with a single round because it wrote a note during its deliberations inquiring whether a single round could constitute two assaults.

## **DISPOSITION**

The judgment is affirmed.


SMITH, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


SNAUFFER, J.

6.